[No. 4442.   Decided January 7, 1903.]

ARTHUR GOE, *Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant.*

NEGLIGENCE — ACCIDENTAL INJURY — PROXIMATE CAUSE.

Where the primary cause of an injury is a pure accident, occasioned without fault of the injured party, and which would not have resulted in the injury excepting for a negligent act of the defendant, such negligence is the proximate cause of the injury, for which damages are recoverable.

SAME — INJURY TO SERVANT — SAFE PLACE TO WORK — QUESTION FOR JURY.

Where a common laborer, employed in a gravel pit in connection with the work of a steam shovel, ignorant of the mechanical structure of the boom and crane attached to the shovel, is ordered

by the foreman to go out upon the boom to assist in righting
things after the overturning of the shovel, without being warned
of the dangers of the position, and, by reason of the slippery con-
dition of the boom, falls and strikes the lever of the crane engine,
thereby starting the machinery in motion, and in throwing out
one hand to recover himself has it caught and ground in a cog
wheel, the danger of the sudden starting of the crane engine be-
ing capable of avoidance by having the steam shut off complete-
ly by a valve for that purpose between the crane engine and the
main engine of the shovel, a question of fact as to defendant's neg-
ligence is presented for the consideration of the jury, and it is for
them to determine, from such a state of facts, the proximate
cause of the injury. (ANDERS, J., dissents.)

Appeal from Superior Court, Lewis County.—Hon.
ALONZO E. RICE, Judge. Affirmed.

*B. S. Grosscup* and *James F. McElroy,* for appellant.

*Maurice A. Langhorne (C. H. Forney,* of counsel), for
respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an appeal from the judgment of
the superior court of Lewis county in favor of respondent
for the sum of $1,500 and costs. Respondent was em-
ployed by appellant as a common laborer. His duties were
to assist as such laborer in the operation of a steam shovel
at Skookum Chuck gravel pit, near Centralia, in Lewis
county. He had been working at such employment for
five days at the time of his injury, assisting in leveling the
track, setting jack blocks, and other such work. Foster
was foreman of the work, and had supervision over all the
men. Shortly prior to the injury to the respondent, the
steam shovel had tipped over, and the men, under the super-
vision of Foster, were engaged in righting the machinery
to resume the work. The machine consists of a boom, a
crane, and a dipper arm, to which is attached the dipper or

shovel. The boom is a stand mounted on wheels running on a track out into the gravel pit. The crane is a movable arm attached to the boom. The boom is run by a main engine inclosed in a car. The crane is worked by a smaller engine, called the "crane engine," stationed at the foot of the boom. Power is furnished to the crane engine by a steam pipe running from the larger engine, and is controlled by a globe valve or shut off directly over the head of the crane engineer. The crane engine is manipulated by a throttle lever at the cranesman's hand. The steam may be shut off from the crane engine alone, or it may be shut off back of the crane engine between there and the main engine. At the time of the accident to the machinery, under the order of Foster, the superintendent, the cranesman was sent from his particular post of duty to assist in putting things in order above, leaving the lever unguarded and unlocked. The steam was not shut off at the valve, being shut off from the crane engine only. The respondent was called by the superintendent, Foster, from his place of work in the gravel pit, and ordered to ascend the boom, and assist there in replacing some machinery that had slipped out of place. In attempting to obey the order, he stepped on the lower part of the boom, which was wet from rain, slipped and fell,—he having on rubber boots at the time,—struck against the unguarded lever, and set the machinery in motion. In attempting to save himself, his hand came in contact with the cog wheel, which, proceeding to revolve, ground off his thumb.

It is not contended by the appellant that the respondent was guilty of contributory negligence, and there is none shown by the record; but it is strenuously insisted that there was no proof of negligence on the part of the appellant, and that the injury sustained was the result of an

accident for which no one is responsible.     It is not neces-
sary to enter into a discussion of the familiar principles,
so often and so uniformly asserted by this court, that it is
the duty of the master to furnish the servant a reasonably
safe place in which to work, that the servant assumes the
risks of apparent dangers of the employment, that the em-
ployer is not an insurer of the safety of the servant, and
that the servant is bound to use his faculties and exercise
his common sense to avoid dangers.     These may all be
conceded as the accepted doctrines of this court, and, if it
appeared in this case, as it did in *Bullivant v. Spokane,*
14 Wash. 577 (45 Pac. 42), cited by appellant, that the
injured employee could have seen and appreciated the
perils to which he was exposed in his employment, the
judgment would have to be reversed.     But the record does
not show that the respondent was aware of the danger
which beset him, and which was the cause of his injury, for
he testified that he was not acquainted with the machinery
of the crane; that he had not been on it before, and had not
paid any attention to its working, his attention having been
absorbed by his own duties; and that he had not been
notified of the danger when he was sent upon the crane to
work.     So that the questions of apparent dangers and pru-
dent actions on the part of respondent are eliminated from
the case on appeal, the jury having passed upon those ques-
tions under competent testimony and legal instructions.
The main insistence is that the injury was caused by an
accident, for which the appellant was in no way respon-
sible; and it is argued that, if it had not been for the ac-
cident of falling, supplemented by the accident of striking
the lever, still further supplemented by the fact of the re-
spondent throwing his hand on to the cogs, no injury would
have been sustained.     This may be conceded without set-
tling the question of proximate cause, for it is well estab-

lished that, where the primary cause of an injury is a pure accident, occasioned without fault of the injured party, if the negligent act of the defendant is a co-operating or culminating cause of the injury, or if the accident would not have resulted in the injury excepting for the negligent act, the negligence is the proximate cause of the injury for which damages may be recovered. That doctrine does not conflict with the rule requiring the plaintiff to use ordinary care and diligence. This rule was followed by this court in *Gray v. Washington Water Power Co.,* 27 Wash. 713 (68 Pac. 360), and has been announced in later decisions. So that the ultimate and controlling question in this case is not the question of the accident, but the question of whether or not it was negligence on the part of the appellant to send the respondent to work upon the crane without shutting the steam off from the main engine, and without notifying him of the mechanism of the crane, or warning him of the danger from striking the lever. In *Doyle v. Chicago, etc., Ry. Co.,* 77 Iowa, 607 (4 L. R. A. 420, 42 N. W. 555), where a coupling pin had been left by the company's employees on the track, and was hurled from the track by a passing train, and injured the plaintiff, a judgment for damages was sustained; the court saying the fact that the accident was an unusual one would not relieve the defendants from responsibility for the negligent act which might result in danger in many ways.

The decision of this case is not without difficulty, but, considering the fact that the respondent, who did not know the mechanical structure of the crane, was sent upon it without warning; that a lever of two and one-half feet was left unprotected and unguarded, the engineer, whose duty it was to operate and control it, having been called away from it; and that the mere touching of this lever would start in motion machinery which was dangerous to those

working around, it does not seem to us that this court can say as a matter of law that there was no negligence, or that, conceding the truthfulness of respondent's testimony, there could be no difference of opinion in honest minds as to whether negligence could be inferred.     The case would not have been any more favorable to appellant, it seems to us, if some one else, who had been ordered or permitted by the superintendent to go there, had, by accident or mismanagement, struck the lever and set the machinery in motion, thereby causing the same injury to respondent.     In such case, the respondent being rightfully where he was sent, and his action in falling eliminated, it would seem to us that the question of negligence would properly be submitted to the jury.     There certainly was a perfectly safe way to do this work, viz., by cutting off the steam between the crane engine and the main engine.     It might possibly have taken a few minutes longer, but brief time is not to weigh against the safety of the workmen.     On the question of the necessity of having the steam from the main engine on, the testimony of both the plaintiff and defendant was exceedingly evasive and unsatisfactory, and the question was a proper one to be submitted to the jury.

On the whole we are inclined to think, under the rules we have so often announced and under the rule announced by the supreme court of the United States in *Milwaukee & St. P. Ry. Co. v. Kellogg,* 94 U. S. 469, viz., that what is the proximate cause of an injury is ordinarily a question for the jury; that it is not a question of science or of legal knowledge, but is to be determined as a fact, in view of the circumstances of fact attending it,—that there was sufficient testimony on the question of negligence to be submitted to the jury.

We do not think, under the uniform rulings of this

court, that the question of fellow servant is involved.    According to the testimony of Foster, which was uncontradicted, he was the superintendent of the appellant, and every one, including both engineers, worked under his orders.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON and MOUNT, JJ., concur.

ANDERS, J. (dissenting).—I am constrained to dissent from the conclusions announced by my associates in this case for the reason that, upon the facts disclosed by the record and clearly stated in the opinion of the majority of the court, I am unable to see wherein the appellant was guilty of any negligence whatever.    It does not appear that the engine was defective in any of its parts, or that it was not being used with ordinary care.    It is evident that the respondent would not have been injured as he was if the engine had not been put in motion by the application of external force to the throttle lever, which was designed and used to start and to stop it.    And I think it may be said, as matter of law, under the circumstances revealed by the record, that it was not incumbent on the appellant to anticipate or provide against the possibility that the respondent might voluntarily or involuntarily move the lever, and thus set the machinery in motion.    He was not called upon to do anything involving the use of the lever, or even the engine, and hence there was no occasion or duty to warn him not to meddle therewith. ·  In short, it seems to me that respondent's injury was the result of a mere accident, for which appellant ought not to be held responsible; and, if I am correct in this conclusion, it follows that this case does not fall within the rules announced in the cases cited in the majority opinion.

I think the judgment should be reversed.